UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JARRON DONTI GEORGE,

    Petitioner,                               Case No. 11-cv-15082

v.                                                  HONORABLE STEPHEN J. MURPHY, III

CAROL HOWES,

    Respondent.
_____/

**OPINION AND ORDER DENYING THE HABEAS CORPUS
PETITION, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY,
AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

This is a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner Jarron Donti George is confined at the Brooks Correctional Facility in Muskegon Heights, Michigan. George challenges his conviction for first-degree criminal sexual conduct, Mich. Comp. Laws 750.520b(1)(a), and being a third felony habitual offender, M.C.L. 769.11. Having reviewed the record, the Court finds that George has failed to establish a right to habeas relief, and will deny the petition.

**BACKGROUND**

George was convicted following a jury trial in the Oakland County Circuit Court in 2008.[1] At the trial, Dr. Jenney, an emergency room physician, testified that she examined the victim, known as DG, at the hospital on April 1, 2005. DG was accompanied by her mother. DG told Dr. Jenney and a nurse that about a year previously, her uncle had put his private parts into hers. Dr. Jenney testified that DG's hymen was not intact and there were

---

[1] George was originally convicted of this offense in 2006, but the Michigan Supreme Court ordered a new trial. *People v. George*, 481 Mich. 867 (2008). The current petition challenges petitioner's conviction following his second trial.

1

rough edges to the hymen. Dr. Jenney testified that a girl at DG's age should have had a smooth hymen but that DG's was not. Dr. Jenney testified that the rupture appeared to be old. Although acknowledging that a hymen could rupture by other means, Dr. Jenney indicated that there was no history given by DG or her mother regarding alternative causes, and these causes in any event would have to be forceful or involve an act of penetration. Dr. Jenney testified that DG was emotionally upset and scared while at the hospital. Tr. Trans. Aug. 14, 2008, pp. 77-109, ECF No. 8-4.

DG testified that she was sexually assaulted by George, who was her uncle, when she was six years old. DG testified that she returned home from a birthday party. DG testified that her mother, George, and several other persons were in the home when she returned. DG's mother asked George to take DG upstairs. George took DG to her room, put her down on the bed, pulled down her panties, and put his "private part," i.e. the part he used to go to the bathroom, into DG's private part. DG yelled when George did this but he covered her mouth with his hand. DG testified that the assault lasted a long time and that it hurt. *Id.* at 110-168.

DG testified that she did not leave her bedroom to inform anyone about the assault because she was afraid that she would get in trouble, specifically from George. When DG was asked why she had previously stated that she wasn't afraid of George, she began to cry. *Id.*

DG indicated that the first person that she told about the assault was her friend and next door neighbor "Anna." The two girls were in a closet, when Anna told DG that her father had done something wrong to her but she did not give details of the sexual assault. *Id.*

DG's sister Marquayla Payne, who was seventeen years old at the time, overheard the two girls talking and began questioning DG about the assault. DG testified that she told Marquayla the truth, claiming that she was aware that she could get in trouble if she did not. Marquayla then told her mother about the allegations. DG's mother asked her questions about the assault, before taking her to the hospital. *Id.* at 169-201.

Marquayla Payne testified that when DG was six years old, she overheard DG inform a friend that George had raped her. Marquayla was downstairs when she overheard this statement and DG and her friend were in the bedroom at the top of the stairs. Marquayla testified that the door at the top of the stairs was open. After questioning DG's friend to verify what Marquayla had thought that she had heard, she called DG downstairs and questioned her. DG confirmed that George had raped her. Marquayla asked DG when the assault had taken place and what had transpired. DG informed Marquayla that one day after returning from a birthday party, George had been taken her and her sisters upstairs. DG told Marquayla that she was the last person to go upstairs. DG informed Marquayla that George laid her down on the mattress, lifted up her dress, and put his "thing" into her. Marquayla testified that if the door at the bottom of the stairs had been shut, since the doorknob had fallen off, the victim would essentially have been locked upstairs. DG informed Marquayla that George had put his hand over her mouth. *Id.*

Marquayla asked DG why she hadn't told her mother about the assault, to which DG stated that her mother had been asleep at the time. Marquayla asked DG why she hadn't told her the next time she came over and DG did not say anything. Marquayla warned DG that if she was making up a false story that she would get in trouble. DG indicated that she wasn't lying and she offered to take a lie detector test. Marquayla then explained about a

3

blood sugar monitor that they had told the children was a lie detector. *Id.*

Marquayla subsequently informed her mother's friend, who called their Aunt Lori. The aunt, in turn, informed the victim's mother, Shayla George. Shayla George came to the home and asked Marquayla what DG had said. Shayla George and the aunt also spoke with DG. Shayla George and the aunt then took DG to the hospital. *Id.*

George testified in his own behalf at trial and denied sexually assaulting the victim. *Id.* at 208-226.

George's conviction was affirmed on appeal. *People v. George,* No. 288258, 2010 WL 2011610 (Mich. Ct. App. May 20, 2010) (Gleicher, J., dissenting); *leave to appeal denied*, 488 Mich. 954 (2010).

## STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set

of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "a federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* "[I]f this standard is difficult to meet, that is because it was meant to be." *Id.* Although 28 U.S.C. §

2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n.5 (1979)) (Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87. Finally, in reviewing a petitioner's claims, a petitioner is "entitled to a fair trial but not a perfect one." *Lutwak v. United States,* 344 U.S. 604, 619 (1953).

## DISCUSSION

George seeks a writ of habeas corpus on the following grounds: first, that the trial court erroneously admitted hearsay evidence; second, that the prosecutor committed misconduct by arguing facts not introduced at the trial, as well as mentioning the victim's mother and referencing a lie detector test; and third, ineffective assistance of counsel stemming from his attorney's failure to object to the prosecutor's above remarks.

I.      <u>Hearsay Evidence Claim</u>

George first contends that the trial court erred in ruling that DG's statements to her older sister Marquayla Payne concerning the sexual assault were admissible under Mich. Rules Evid. 803 (24), the residual hearsay exception rule. A majority of the Michigan Court of Appeals rejected petitioner's claim, ruling that DG's out-of-court statement to her sister concerning the sexual assault was admissible pursuant to the residual hearsay exception rule contained in M.R.E. 803(24). *George,* Slip. Op. at *2-3.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *See Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000); *see also Gross v. Warden, Lebanon Correctional Inst.,* 426 Fed. App'x. 349, 362, n.5 (6th Cir. 2011).

Examination or review of the admissibility of evidence under Michigan's hearsay rules is not cognizable in a habeas corpus proceeding. *See Byrd v. Tessmer,* 82 Fed. App'x. 147, 150 (6th Cir. 2003); *see also Rhea v. Jones*, 622 F. Supp. 2d 562, 589 (W.D. Mich. 2008); *Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002) (petitioner's claim that state court erred in admitting hearsay testimony under state evidentiary rule governing declarations against penal interest not cognizable in federal habeas review, where the claim alleged a violation of state law, not a violation of federal constitutional rights). The admission of this evidence, even in violation of Michigan's rules of evidence, would not entitle petitioner to federal habeas relief.

The admission of a prior consistent statement when the declarant is available for cross-examination at trial, as was the case here, is not a question that rises to the level of a constitutional violation for purposes of habeas corpus relief. *See, e.g., United States ex. rel. Gonzalez v. DeTella,* 918 F. Supp. 1214, 1222 (N.D. Ill. 1996) (internal citations omitted). Indeed, there is no violation of the Sixth Amendment's Confrontation Clause when the witness testifies at trial and is subject to unrestricted cross-examination. *United States v. Owens,* 484 U.S. 554, 560 (1988); *see also Crawford v. Washington,* 541 U.S. 36, 59, n.9 (2004); *U.S. v. Mayberry*, 540 F.3d 506, 516 (6th Cir. 2008). As the Supreme Court has explained, "where the declarant is not absent, but is present to testify and to submit to cross examination, our cases, if anything, support the conclusion that the admission of his out of court statements does not create a confrontation clause problem." *California v. Green,* 390 U.S. 149, 162 (1970). In this situation, "the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements." *Owens,* 484 U.S. at 560 (internal citations omitted). When a declarant's out-of-court statement is admitted at a criminal defendant's trial, "the question is whether defendant has the *opportunity* to cross-examine the declarant at trial." *Strayhorn v. Booker,* 718 F. Supp. 2d 846, 867 (E.D. Mich. 2010)(emphasis original). Because DG testified at trial and was subjected to cross-examination, the admission of her out-of-court statement to her sister under the residual hearsay exception contained in M.R.E. 803 (24) did not violate George's right to confrontation. *See Katt v. Lafler,* 271 Fed. Appx. 479, 483-84 (6th Cir. 2008). George is not entitled to habeas relief on his first claim.

II.     <u>Prosecutorial Misconduct Claim</u>

George next alleges that he was deprived of a fair trial because of prosecutorial

misconduct.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir.2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir.2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly*, 416 U.S. at 643-45. The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F. 3d 959, 964 (6th Cir. 1997) (quoting *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)). Finally, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F. 3d 501, 516 (6th Cir. 2006) (*quoting Donnelly*, 416 U.S. at 645). Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (quoting *Harrington*, 131 S. Ct. at 786–87). This is particularly so, "because the *Darden* standard is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations[,]'". *Id.* (quoting *Yarborough*, 541 U.S. at 664).

George's primary claim is that the prosecutor committed misconduct by arguing facts that had not been introduced into evidence. Respondent contends that this claim is procedurally defaulted because George failed to object at trial and the Michigan Court of Appeals reviewed the claim for plain error. George argues in his third claim that his trial counsel was ineffective for failing to object to the prosecutorial misconduct. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of George's defaulted claim, the Court will simply consider the claim on the merits. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

George claims that the prosecutor committed misconduct by stating in her closing argument that the victim had told her mother about the sexual assault. George claims that this comment was improper and injected matters that had not been introduced into evidence, because the victim's mother did not testify at his trial.

The Michigan Court of Appeals rejected this claim, noting that although the victim's mother did not testify at George's trial, there was testimony that the victim had repeated her sexual assault allegation to her mother. There was also testimony that the victim's mother had questioned her about the assault, that the victim had shown her mother the dress that she had been wearing at the time of the assault, and that the victim's mother took her to the hospital to be examined. The prosecutor's statement that the victim told her mother about the sexual assault was proper because it was supported by the evidence and any reasonable inferences arising from it. *George,* Slip. Op. at * 4. The Michigan Court of Appeals further concluded that any prejudice from the statement was dispeled by the

judge's instructions to the jury that the statements and arguments of counsel were not evidence and that the jurors were to decide the case based solely on the evidence. *Id.* at * 4-5.

Misrepresenting facts in evidence by a prosecutor can amount to substantial error because doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Washington v. Hofbauer,* 228 F. 3d 689, 700 (6th Cir. 2000)(*quoting Donnelly*, 416 U.S. at 646). Likewise, it is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial. *Byrd v. Collins*, 209 F. 3d 486, 535 (6th Cir. 2000). However, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Id.*

In the instant case, there was some record support for the prosecutor's argument. The victim testified that she informed her mother about the sexual assault. Her sister Marquayla Payne also testified that the victim told her mother about the assault. Testimony at trial indicated that the victim's mother took her to the hospital to be examined by a doctor. Because there was at least some factual support on the record for the prosecutor's argument that the victim had informed her mother about the assault, the prosecutor's remarks did not deprive George of a fair trial. *See U.S. v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008). Moreover, any possible prosecutorial misconduct in attempting to inject facts that had not been introduced into evidence was also ameliorated by the trial court's instruction that the lawyers' comments and statements were not evidence. *See Hamblin v. Mitchell,* 354 F. 3d 482, 495 (6th Cir. 2003).

George, however, further contends that because his conviction from his first trial had

been reversed in part because of the erroneous admission of the victim's mother's testimony about the victim's disclosure of the sexual assault to her, the prosecutor's mere reference in her closing argument to the fact that the victim had informed her mother about the rape allegation requires reversal. In rejecting this claim, the Michigan Court of Appeals noted that the victim's mother had testified at petitioner's first trial "in great detail regarding statements made by the victim, including allegations that defendant had hit her to prevent her from telling her mother." The prosecutor had "highlighted the mother's testimony during closing argument and described it as one of two powerful moments of the trial, noting the mother's emotional state as she testified." *George,* Slip. Op. at * 5. By contrast, at petitioner's second trial, the prosecutor made only "a brief, passing reference to the fact that the victim had told her mother about the allegation, without revealing any of the victim's actual statements to the mother." The Michigan Court of Appeals concluded that the prosecutor's brief remark at petitioner's second trial could not "reasonably be compared to the victim's mother's extensive and emotional testimony at the first trial." *Id.*

The Michigan Court of Appeals' rejection of George's claim was reasonable. Although the prosecutor briefly referred to the fact that the victim had mentioned the sexual assault to her mother, she did not reveal or discuss the contents of the victim's statements to her mother in her closing argument. Moreover, even if the prosecutor's remarks could be construed as the introduction of the victim's hearsay statement to her mother, there is no Supreme Court decision which holds that the improper use of a witness's prior consistent statements violates the federal constitution. *See Drain v. Woods,* 902 F. Supp. 2d 1006, 1037 (E.D. Mich. 2012). Therefore, any use by the prosecutor of the victim's hearsay statements to her mother to bolster her testimony did not amount to prosecutorial

misconduct. *Id.*

George lastly claims that the prosecutor committed misconduct by referring to the fact that the victim had indicated a willingness to take a polygraph examination.

"The Supreme Court has never held that statements implying the results of a polygraph or similar test render the defendant's trial fundamentally unfair, in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments. *Maldonado v. Wilson,* 416 F.3d 470, 477 (6th Cir. 2005) (holding that state appellate court's decision to uphold conviction, despite arguably erroneous admission on redirect of police officer's testimony that key prosecution witness passed "test" for truthfulness, was not contrary to or unreasonable application of federal due process law, in that statements implying truth testing do not render trial fundamentally unfair). George is not entitled to habeas relief on his second claim.

III.  Ineffective Assistance of Counsel Claim

George lastly contends that his trial counsel was ineffective for failing to object to the prosecutorial misconduct he complained of above.

To show a denial of the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial

strategy. *Id.* at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.' " *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington*, 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009). The *Strickland* standard also applies to claims of ineffective assistance of appellate counsel. *Whiting v. Burt,* 395 F.3d 602, 617 (6th Cir. 2005).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough*, 541 U.S. at 664). Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas

petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *Hinkle v. Randle,* 271 F. 3d 239, 245 (6th Cir. 2001). Because the Court has already determined that the prosecutor's comments did not deprive George of a fundamentally fair trial, George is therefore unable to establish that he was prejudiced by counsel's failure to object to these remarks. *Slagle,* 457 F. 3d at 528. George is not entitled to habeas relief on this claim.

IV.  Certificate of Appealability

Pursuant to 28 U.S.C. § 2253, before a petitioner may appeal a decision of this Court, the Court must determine if petitioner is entitled to a Certificate of Appealability ("COA"). 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b). The Court must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R.App. P. 22(b). A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the

issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893, n.4 (1983)).

In applying the above standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Miller-El*, 537 U.S. at 336-37. "When a habeas applicant seeks permission to initiate appellate review of the dismissal of his petition," a federal court should "limit its examination to a threshold inquiry into the underlying merit of his claims." *Id.* at 323. The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *see also Strayhorn*, 718 F. Supp. 2d at 875.

After conducting the required inquiry, and for the reasons stated in the order above, the Court finds that George has not made a substantial showing of the denial of a constitutional right with respect to his claims. *See* 28 U.S.C. § 2253(c)(2). Because the Court can discern no good faith basis for an appeal, *see Miller-El*, 537 U.S. at 338, any appeal would be frivolous. The Court will therefore deny a certificate of appealability. *See Long v. Stovall,* 450 F. Supp. 2d 746, 755 (E.D. Mich. 2006). The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *See Hence v. Smith*, 49 F. Supp. 2d 547, 549 (E.D. Mich. 1999).

## ORDER

**WHEREFORE** it is hereby **ORDERED** that George's petition for a Writ of Habeas Corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Court **DECLINES** to issue a certificate of appealability.

**IT IS FURTHER ORDERED** that the Court **DENIES** leave to proceed in forma pauperis on appeal.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: June 20, 2013

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 20, 2013, by electronic and/or ordinary mail.

Carol Cohron
Case Manager